## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KURT ALEXANDER,                          *

     Plaintiff,                         *

v.                                       *          Civil Action No. 8:24-cv-02752-PX

STERLING PROCTOR, *et al.*,
                                         *
     Defendants.                         *
                                         *
                                         *
                                         *
                                      ***

## MEMORANDUM OPINION

Pending in this disability discrimination case is Defendants' motion to dismiss the Amended Complaint, or in the alternative for summary judgment in their favor. ECF No. 41. The motion is fully briefed, and no hearing is necessary. D. Md. Loc. R. 105.6. For the following reasons, the motion, construed as one for summary judgment, is GRANTED.

### I.      Background

In the spring of 2021, Plaintiff Kurt Alexander ("Alexander") worked as a law enforcement officer for Federal Protective Services ("FPS"), an arm of the Department of Homeland Security ("DHS"), and lived in private military housing at Joint Base Andrews in Maryland (the "Base").[1] ECF No. 8 ¶¶ 25–29. On April 28, 2021, while off-duty, Alexander contacted the Base police to inform them that two weeks prior, a person with "mental health issues" who did not live on the Base had illegally snuck guns onto the premises. *Id.* ¶¶ 28–29. *See also* ECF No. 46-4 at 2. Alexander refused to share the person's identity with the Base police, which "caused friction," with the officers. ECF No. 46-4 at 2.

---

[1] Alexander no longer works for FPS. ECF No. 46-4 at 1.

While Base police continued to talk with Alexander over the phone, they grew concerned about his "statements and demeanor." ECF No. 42-9 at 3. So, they told Alexander they were headed to his home. ECF No. 46-4 at 2. Alexander objected, noting he had just taken "his night meds," which made him drowsy. ECF No. 42-9 at 4. This vague reference to medication, in combination with Alexander's behavior, prompted the officers to ask Alexander whether he had taken "anti-psychotic[s]," which he denied. ECF No. 46-4 at 2. Alexander also continued to resist meeting with law enforcement, telling officers that he would only consider meeting "somewhere away from [his] house." ECF No. 46-4 at 2.

At some point, the Base police grew concerned that Alexander had "barricaded" himself in the home with his young children, ECF No. 42-9 at 3. The officers, in turn, enlisted the help of Alexander's supervisor, Defendant Sterling Proctor, as well as agents from the Federal Bureau of Investigation and a hostage negotiator to help coax Alexander out of the house. *Id.*; ECF No. 42-6 at 7; ECF No. 46-4 at 3. Eventually, Proctor convinced Alexander to meet in front of his home. ECF No. 46-4 at 3.

As Alexander emerged from the home, law enforcement officers "surrounded" him. ECF No. 46-4 at 3. Alexander agreed that officers could search the home and check on his children, although later he claimed such consent was coerced. *Id.* Officers ultimately found and seized firearms from the residence. *Id.* at 4.

As the April 28 events unfolded, Proctor contacted Alexander's wife to ask what medications Alexander had been taking, ECF No. 42-6 at 7. She replied that Alexander only takes cholesterol medication. ECF No. 42-2 at 3.

The next day, FPS opened an investigation, placed Alexander on administrative leave, and required that he turn in his gun and badge. ECF No. 46-4 at 4–5. He returned to work

2

pending an internal investigation that lasted nine-months, during which time he was relegated to desk duties. *Id.* at 5. *See also* ECF No. 42-1 at 1; ECF No. 42-5 at 1. Alexander, in response, took legal action.

## II.    Procedural Background

On August 12, 2021, Alexander filed an informal complaint with the DHS Equal Employment Opportunity ("EEO") office. ECF No. 42-2 at 7. In it, Alexander contended that Proctor's question to Alexander's wife about his current medications constituted disability discrimination and created a hostile work environment. *See* ECF No. 42-2 at 7. On November 2, 2021, Alexander filed his EEO complaint, which added that FPS Agent, Brandon Scott, improperly asked about Alexander's medications as part of the FPS investigation, as a separate basis to support his disability discrimination claim. ECF No. 42-3 at 3.

On February 8, 2022, DHS EEO accepted for investigation the claim regarding Proctor and dismissed the claim related to Scott. ECF No. 42-4 at 1. On May 2, 2022, the EEO issued its Report of Investigation, ECF No. 42-6 at 4, and DHS moved to dismiss the claim as insufficient. ECF No. 42-9 at 1. The Administrative Judge granted the motion. *Id.* at 3–4. On October 19, 2022, DHS by Final Agency Order, adopted the Administrative Judge's decision and advised Alexander of his right to pursue the claim in federal court. ECF No. 42-10 at 1, 4–5.

On January 13, 2023, Alexander filed suit in the United States District Court for the District of Columbia against DHS and FPS, alleging violations of the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.*, (Counts I & II), the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, (Counts III & IV), the Privacy Act, 5 U.S.C. § 552(a) (Count V),  the Fourteenth Amendment to the United States Constitution,  U.S. Const. Art. XIV, (Count VIII), defamation (Count VI) and false imprisonment (Count VII). *Alexander v. Mayorkas*, 23-cv-00120-CJN

(D.D.C. Jan. 13, 2023), ECF No. 1.  Alexander thereafter amended the Complaint to pursue

Rehabilitation Act claims (Counts I–III), a Fourth Amendment *Bivens* action (Count IV), and

defamation (Count V).  *Id.,* ECF No. 8.

Defendants moved to dismiss all counts.  *Id.,* ECF No. 12.  The court granted

Defendants' motion to dismiss the *Bivens* and defamation claims but denied dismissal as to the

Rehabilitation Act claims on a narrow liability theory.  *Id.*, ECF No. 17 at 2-3.  The

Rehabilitation Act claims proceeded solely as to Proctor's query to Alexander's wife, and the

remaining allegations were dismissed for lack of administrative exhaustion.  *Id.*  The court next

transferred the matter to this Court with consent of the parties.  *Id.*, ECF No. 19.  Defendants

now move to dismiss Counts I, II and III on the remaining liability theory, or alternatively, for

summary judgment in their favor.  ECF No. 41.

### III.    Standard of Review

A motion to dismiss styled in the alternative as a motion for summary judgment

implicates the Court's discretion under Federal Rule of Civil Procedure 12(d).  *See Bosiger v.

U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *Kensington Volunteer Fire Dep't, Inc. v.

Montgomery Cty.*, 788 F. Supp. 2d 431, 436 (D. Md. 2011), *aff'd sub nom. Kensington Volunteer

Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462 (4th Cir. 2012).  Pursuant to Rule 12(d),

a court may convert a motion to dismiss to one for summary judgment under Rule 56 where the

non-movant (1) is "given some indication by the court that it is treating the 12(b)(6) motion as a

motion for summary judgment;" and (2) is "afforded a reasonable opportunity for discovery."

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264,

281 (4th Cir. 2013) (internal marks and citations omitted).  As to the first prong, notice is

satisfied where "the movant expressly captions [his] motion 'in the alternative' as one for

summary judgment." *Hart v. Shearin*, No. GLR-15-2056, 2016 WL 3459846, at *4 (D. Md. June 24, 2016) (citing *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005)).   As to the second prong, the non-movant "cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Id.* (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)); *see also Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) ("[T]he failure to file an affidavit under [Rule 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.") (citation omitted).

Defendants expressly moved in the alternative for summary judgment, ECF No. 41.   In response, Alexander obliquely suggests that the Court should refrain from reaching summary judgment absent formal discovery, ECF No. 46-1 at 9.  But he fails to "show by affidavit or declaration that, for specified reasons," he "cannot present facts essential" to oppose summary judgment.  Fed. R. Civ. P. 56(d).  *See also Nadir v. Blair,* 549 F.3d 953, 961 (4th Cir. 2008) ("A party must comply with Rule 56[(d)] which requires that it set out the reasons for discovery in an affidavit, and it cannot withstand a motion for summary judgment by merely asserting in its brief that discovery was necessary.").[2]  Instead, Alexander submits evidence beyond the four corners of the Amended Complaint for the Court's consideration.  *See* ECF Nos. 46-2 through 46-4.  Thus, the Court will construe the motion as one for summary judgment.

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, the Court finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477

---

[2] Although Alexander submits a declaration, which the Court considers most favorably to him, he fails to explain why he cannot present facts essential to opposing the summary judgment motion.  ECF No. 46-4.  Rather, Alexander emphasizes that, in his view, the additional evidence he provides via declaration "create[s] genuine issues of material fact in dispute and discovery is needed to resolve them."  *Id.* ¶ 16.

U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

        With this standard in mind, the Court turns first to the discrimination claims.

IV.     **Analysis**

        A.  **Discrimination**

        The Amended Complaint avers that Proctor's question about Alexander's medication amounts to discriminatory inquiry about his disability.  ECF No. 8 ¶¶ 72 & 78-87.  To survive summary judgment, Alexander must adduce some evidence that: (1) he is disabled within the meaning of the statute; (2) he otherwise meets the requisite job qualifications; and (3) he suffered an adverse employment action solely because of his disability.  *Biniaris v. Hansel Union Consulting, PLLC*, 382 F. Supp. 3d 467, 472 (E.D. Va. 2019) (citing *Halpern v. Wake Forest Univ. Health Sci.*, 669, F.3d 454, 461–62 (4th Cir. 2012)).  An employer, more particularly, may not inquire about an employee's disability unless the "examination or inquiry is shown to be job-related and consistent with business necessity."  29 U.S.C. § 791(f) (incorporating 42 U.S.C. § 12112(d)(1) & (d)(4)(A)).  *See also Hannah P. v. Coats,* 916 F.3d 327, 338 (4th Cir.  2019); *Coffey v. Norfolk S. Railway Co.*, 23 F.4th 332, 339 (4th Cir. 2022).  An employer's questions are job related and consistent with business necessity when the questions concern possible impairment of the employee's ability to perform essential job functions, or where "the employee poses a direct threat to himself or others."  *Hannah P.*, 916 F.3d at 339 (quoting *Kroll v. White*

6

*Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014)).

Defendants rightly contend that, even when viewing the evidence most favorably to Alexander, Proctor's question about Alexander's medication amounts to an objectively reasonable inquiry concerning his officer's ability to perform essential job functions. ECF No. 41-1 at 13. Alexander, at the time, worked as an armed FPS officer. He had placed an unusual call to Base police about an unnamed person with firearms on scene and next admitted to having taken medication with a narcotic effect. ECF No. 42-9 at 4. Alexander's odd demeanor and officers' suspicions that he had "barricaded" himself in his home prompted Proctor's objectively reasonable concern that Alexander's medication may have adversely affected his fitness for duty. It also constitutes a reasonable inquiry into the immediate health and safety of all involved. ECF No. 42-9 at 3. Accordingly, no reasonable factfinder could conclude that Proctor's singular question to Alexander's wife amounts to disability discrimination. Summary judgment is granted in Defendants' favor on the claim.[3]

### B. Hostile Work Environment

The Rehabilitation Act protects employees from sufficiently severe and pervasive unwelcome conduct aimed at the employee's disability. *Pueschel v. Peters*, 577 F.3d 558, 564–65 (4th Cir. 2009). "Unwelcome conduct" is actionable when it "alter[s] the terms or conditions of the employment" such that the workplace becomes "permeated with discriminatory intimidation, ridicule, and insult." *Id.* (internal quotation marks and citations omitted). Although in certain circumstances, a single isolated incident may sustain the claim, *see Boyer–*

---

[3] Alexander principally articulates the "medical inquiry" theory of liability in Count II, ECF No. 8 ¶¶ 78–86. But he also alleges in Count I that Defendants' "investigation" into his "mental health" constitutes disability discrimination under the Rehabilitation Act. *Id.* ¶ 72. Although this Court construes the D.C. federal district court's prior dismissal order to have disposed of Count I entirely, ECF No. 17 at 2–3, to the extent the medical inquiry theory of liability is also encompassed in Count I, summary judgment is granted as to this Count for the same reasons.

*Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015), that incident must be sufficiently "severe" so as to have subjected the employee to a workplace permeated with requisite discriminatory animus.  *Id.*

When viewing the facts most favorably to Alexander, the single phone call about his medication did not create a hostile work environment.  Proctor asked out of evident concern for Alexander, his family and the larger community.  No evidence suggests he did so with the intent to belittle or harass Alexander.  A brief conversation to ascertain what medications, if any, Alexander had taken simply cannot carry the cause of action.[4]  Thus, summary judgment must be granted on the hostile work environment claim.

### V.    Conclusion

The Court construes Defendants motion at ECF No. 41 as one for summary judgment and GRANTS judgment in their favor on the remaining claims.

A separate Order follows.


July 2, 2025_____                              /s/_____
Date                                                              Paula Xinis
                                                                   United States District Judge


---

[4] Alexander also maintains that under the "continuing violation doctrine," the Court may consider acts that fall outside the limitations period to support the hostile work environment claim.  ECF No. 46-1 at 13.  Alexander particularly points to the heavy law enforcement presence at his home the morning of April 28, 2021, combined with the subsequent FPS investigation, as arguably sustaining the claim.  *Id*.  Although Alexander takes umbrage at his employer's response to the April 28 incident, including the loss of his law enforcement powers, nothing suggests that he was subjected to an environment "pervaded with *discriminatory* conduct aimed to humiliate, ridicule, or intimidate" on account of his disability.  *E.E.O.C. v. Cent. Wholesalers. Inc.*, 573 F.3d 167, 176 (4th Cir. 2009)(internal and quotation marks omitted) (emphasis added).  Thus, even if the Court considers these facts, the claim nonetheless fails.